UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GRACE BERRY CUMINGS,          )
    Plaintiff,             )
                           )
        v.                  )  Civil Action No. 1:16cv1115
                           )
CAROLYN W. COLVIN,            )
Commissioner of Social Security, )
    Defendant.             )

MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), Grace Berry Cumings ("plaintiff" or "claimant") seeks judicial review of the final decision of the Commissioner of Social Security ("defendant") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34. Both parties filed motions for summary judgment with briefs in support, which are now ripe for resolution. (Dkts. 15, 17.) On January 12, 2017, United States District Judge Anthony J. Trenga referred this matter, with the consent of both parties, to the undersigned United States Magistrate Judge. (Dkt. 23.) For the following reasons, Claimant's Motion for Summary Judgment (Dkt. 15) shall be DENIED and Defendant's Motion for Summary Judgment (Dkt. 17) shall be GRANTED.

I. PROCEDURAL BACKGROUND

Plaintiff filed her application for disability insurance benefits on April 20, 2012, alleging disability as of June 1,

1

2007. (Administrative Record[1] ("R.") 97.) Plaintiff's claims were initially denied on August 8, 2012, and again upon reconsideration on February 4, 2013. (Id. at 116, 125.) On May 6, 2013, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 132.)

ALJ Thomas M. Ray held a hearing on December 17, 2014, during which he received testimony from plaintiff, represented by counsel, and Diana C. Sims, an impartial vocational expert. (Id. at 34.) On February 9, 2015, the ALJ issued his decision, finding that plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act through December 31, 2010, the last date plaintiff was insured. (Id. at 17-33.) The Appeals Council for the Office of Disability Adjudication and Review ("Appeals Council") denied plaintiff's request for review of the ALJ's decision on June 29, 2016. (Id. at 1-6.) Having exhausted her administrative remedies, plaintiff filed a Complaint for judicial review on August 31, 2016. (Dkt. 1.) Defendant answered on November 7, 2016. (Dkt. 10.) The parties then filed cross-motions for summary judgment (Dkts. 15 and 17), and the matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether

---

[1] The certified administrative record was filed under seal on November 7, 2016, pursuant to Local Civil Rules 5(B) and 7(C)(1). (Dkt. 12.)

the Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied. 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. Hays, 907 F.2d at 1456. While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987), *superseded by statute on other grounds as stated in* Stroup v. Apfel, No. 96-1722, 2000 U.S. App. LEXIS 2750, at *12-13 (4th Cir. Feb. 24, 2000).

In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). The correct law to be applied includes the Act, its implementing regulations, and controlling case law. See Coffman, 829 F.2d at 517-18. With this standard in mind, the Court next evaluates the ALJ's findings

and decision.

### III. <u>ALJ's FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The ALJ is required to employ a five-step sequential
evaluation in every Social Security disability claim analysis to
determine the claimant's eligibility. 20 C.F.R. §§ 404.1520,
416.920. As noted above, the Court examines this five-step
process on appeal to determine whether the correct legal
standards were applied, and whether the resulting decision of
the Commissioner is supported by substantial evidence in the
record. In accordance with the five-step sequential analysis,
the ALJ in this case made the following findings of fact and
conclusions of law.

First, plaintiff did not engage in substantial gainful
activity during the period from her alleged onset date of June
1, 2007, through her date last insured ("DLI") of December 31,
2010. (R. 22.) Second, through the DLI plaintiff had the
following severe impairments: fibromyalgia, arthritis, and
degenerative disc disease. (Id.) Third, plaintiff did not have
an impairment or combination of impairments that met or
medically equaled the severity of one of the listed impairments
in 20 C.F.R. Part 404, Subpart P, Appendix 1, through her DLI.
(Id. at 22-23.) Fourth, through her DLI plaintiff had the
residual functional capacity ("RFC") to perform light work as
defined in 20 C.F.R. § 404.1567(b), including the ability to

4

occasionally lift and lift or carry 20 pounds, frequently lift or carry 10 pounds, and within an 8-hour workday, stand or walk for 6 hours and sit for 6 hours, push or pull as much as she could lift or carry, including the use of hand or foot controls, frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, crouch, and occasionally crawl. (Id. at 23.) The ALJ deferred findings about plaintiff's ability to perform work activities citing undeveloped information about self-employment activity. (Id. at 26.) Fifth, considering plaintiff's RFC, age, education, and work experience, there were jobs that existed in significant numbers on the national economy that plaintiff could have performed through the DLI. (Id. at 27.) Therefore, the ALJ determined that plaintiff was not under a disability as defined in the Social Security Act, at any time from June 1, 2007, the alleged onset date, through December 31, 2010, the date plaintiff was last insured. (Id. at 28.)

## IV. RELEVANT FACTUAL BACKGROUND

Plaintiff was 48 years old on December 31, 2010, her DLI. (R. 97.) Plaintiff has a 12th grade education and reported that she worked as a mortgage brokerage account executive, a realtor, and was self-employed including painting and decorating properties. (Id. at 202, 219-25.) Plaintiff alleged disability since June 1, 2007, due to rheumatoid arthritis, fibromyalgia,

muscle spasms, reverse lordosis, chronic pain, and cervical myalgia. (Id. at 97.)

### A. Testimony at the Hearing before the ALJ

At the hearing before the ALJ on December 17, 2014, plaintiff agreed that this is a chronic pain case. (R. at 58.) She compared her pain from 2010 to 2014, stating the pain was "not quite as bad as it is now." (Id. at 59.) Further, plaintiff stated she could move about more during that time, for example she could care for her dog and go out twice a week. (Id.) Plaintiff added that her doctors were aware of the fibromyalgia and rheumatoid but not yet aware of the issues with her neck and the degenerative disk disease. (Id. at 60.) Plaintiff testified after her mastectomies she could not use her arms because her muscles atrophied. (Id. at 61.)  She was instructed to stay in bed during that time and did nothing for six months. (Id.) Plaintiff further stated that an abscess developed which aggravated her healing process and led to a debridement surgery which removed muscles from her right chest area. (Id. at 63.) Plaintiff stated the combined effect of her other health issues with the surgery caused her to take longer to recover from surgery. (Id. at 67.) Plaintiff takes muscle relaxers and pain medication that she said definitely help but have the side effects of fatigue, balance issues, and lack of focus or concentration. (Id. at 69-70.) When plaintiff's attorney

examined plaintiff about the time period of June 2007 to the end of 2009, plaintiff testified that she did nothing and would remain at home. (Id. at 79-80.)

At the administrative hearing, the vocational expert described plaintiff's past work as an account executive that presents as being light as plaintiff performed it, and a self-employed contactor, closely associated with interior decorating as light and skilled. (Id. at 85.) The ALJ asked the vocational expert hypotheticals and about unskilled occupations in the national economy. The vocational expert testified that an individual who could not perform the previous work of plaintiff could attain positions of an office helper, a non-postal mail clerk, or an information clerk. (Id. at 87-88.) Other sedentary positions such as a receptionist, document preparer, and telephone clerk were mentioned. (Id. at 89-90.) The vocational expert acknowledged that an individual with a similar RFC to plaintiff who needs a cane on a frequent basis in order to ambulate and balance, and who could only be productive for 80 percent of the time, would not find available work. (Id. at 91.)

## B. Medical Treatment Records through DLI[2]

The medical records show that plaintiff was evaluated by

---

[2] The Administrative Record contains approximately 500 pages of medical records from various sources relating to plaintiff's medical treatments. This section provides an overview of plaintiff's medical treatments and conditions relevant to her disability claim and is not intended to be an exhaustive list of each and every medical treatment.

Daniele Nunez, M.D. on November 2, 2007. (R. at 537.) Plaintiff described pain in her lower back which radiated from there to her right buttock. (Id.) Dr. Nunez reported the event that precipitated the pain was plaintiff pushing a heavy object. (Id.) Dr. Nunez described the pain as "chronic, but intermittent problem with an acute exacerbation" that caused decreased range of motion in her back. (Id.) Plaintiff was prescribed Percocet, Flexeril, and Naproxen. (Id.) Plaintiff returned to Dr. Nunez seven months later with the same constant back pain but it was no longer radiating. (Id. at 535.) Dr. Nunez noted a decreased range of motion in plaintiff's neck and back and prescribed Percocet and Flexeril again. (Id.) At that time, Dr. Nunez noted plaintiff's medical history for rheumatoid arthritis was significant. (Id.) On April 3, 2009, Dr. David Leonard, M.D., plaintiff's treating physician, examined plaintiff in connection with her fibromyalgia, which had been diagnosed since 2004. (Id. at 533.) Plaintiff's fibromyalgia pain was present in all four body quadrants. (Id.) On May 6, 2009, Dr. Leonard examined plaintiff and reported back pain and her symptoms for fibromyalgia and rheumatoid arthritis were progressive and worsening. (Id. at 533.) In June 2009, Dr. John J. Moynihan, M.D., examined plaintiff after an abnormal left breast imagining report upon referral. (Id. at 541, 684-85.) A biopsy revealed an atypical ductal hyperplasia. (Id. at 548.) Dr. Moynihan

8

discussed treatment options with plaintiff including
chemoprevention and prophylactic mastectomy. (Id. at 685.) He
noted the prophylactic mastectomy was not the standard approach
for hyperplasia. (Id.) Plaintiff expressed interest in a
prophylactic mastectomy at that time. (Id.) In September 2009,
plaintiff presented with a breast lesion, chronic insomnia,
lower back pain, and rheumatoid arthritis. (Id. at 526.)
Plaintiff described the pain of the fibromyalgia as severe in
intensity and causing a lack of sleep. (Id. at 525.) Dr. Leonard
prescribed the same medications, plus an injection, and
initiation of an exercise program was recommended. (Id. at 527.)
In December 2009, plaintiff complained of lower back pain, neck
pain, and wrist pain from a left wrist ganglion. (Id. at 521.)
Dr. Leonard noted worsening symptoms of rheumatoid arthritis,
refilled plaintiff's medications, and ordered x-rays of
plaintiff. (Id. at 521-23.) In January 2010, Dr. Moynihan
performed a bilateral total mastectomy on plaintiff. (Id. at
548.) On January 5, 2010, plaintiff's cervical spine x-ray
revealed moderate disc narrowing and plaintiff's hip/pelvis x-
rays were normal. (Id. at 546.) On January 13, 2010, Dr. Leonard
referred plaintiff to Dr. Stephen W. Pournaras, M.D., of Fair
Oaks Orthopaedic Associates, Inc. to assess "problems with her
left arm." (Id. at 702.) Dr. Pournaras found a small cyst but
was not inclined to excise it without a further work up. (Id.)

9

He referred plaintiff to another doctor for neurologic consultation. (Id.) The next month, Dr. Pournaras recommended plaintiff not do anything with the wrist cyst. (Id. at 703.) Plaintiff had a right breast infection in May 2010, related to a reconstructive implant, which required emergency surgery of debridement of her right breast, tissue, and muscles. (Id. at 467.)

### C. Medical Opinions by Treating Physicians after DLI

On January 20, 2011, plaintiff was examined by Dr. Leonard. (Id. at 512.) Plaintiff reported continued back pain and was prescribed refills of Naproxen, Percocet, Soma, and Savella. (Id. at 514.) In October 2011, Dr. Leonard noted that patient has been without any improvement of her pain. (Id. at 497.) A decreased range of motion and pain with motion was recorded in plaintiff's shoulders, back, and hips. (Id. at 499.) On May 14, 2012, Dr. Leonard evaluated plaintiff. She remained on a number of medications and records continued to show insomnia, chronic pain, and fatigue. (Id. at 477.)

In September 2012, Dr. Leonard wrote a statement detailing his long term treatment of plaintiff and his opinion that "plaintiff is disabled from working in a meaningful capacity due to her multiple medical problems." (Id. at 711.) He stated plaintiff is not able to sit or stand for prolonged periods of time, cannot lift more than 15 pounds, and cannot do repetitive

bending or stooping. (Id.) He also stated that she tires easily from her pain medications. (Id.)

On May 23, 2013, Dr. Alex Croog, M.D., of Commonwealth Orthopaedics and Rehabilitation P.C., examined plaintiff after plaintiff reported a previous doctor told her to "go away." (Id. at 673.) Dr. Croog noted her medical history and reported on her chief complaint which was "acute on chronic left wrist pain." (Id.) After his assessment, the treatment plan was for plaintiff to wear a thumb brace for 3 weeks, continue taking Naprosyn, and return in a month. (Id.) Other treatments such as a cortisone injection and "as a last resort" surgery were discussed. (Id.) In June 2013, Dr. Leonard reported plaintiff's severe fatigue, inability to maintain sleep, and depression. (Id. at 692.)

In sum, plaintiff's records show persistent problems with pain, fibromyalgia, rheumatoid arthritis, breast lesion, chronic insomnia, and fatigue. Dr. Leonard repeatedly stated that plaintiff's symptoms have been "progressive worsening."

### D. State Agency Medical Opinions

On August 7, 2012, Dr. William Amos, M.D., a state agency physician, reviewed the evidence of record in plaintiff's file, including the medical evidence, and concluded that plaintiff's condition was not disabling on any date from plaintiff's alleged onset date through her DLI. (R. 104.) Dr. Amos specifically noted that "while the records show you did suffer from pain and

11

discomfort, there was no significant limitation" in plaintiff's ability to stand, walk, and move about. (Id.) Further, the records showed no evidence of any significant muscle weakness or loss of control due to nerve damage and the records showed no other impairment or combination of impairments which would have significantly limited plaintiff's ability to work. (Id.) On February 1, 2013, Dr. R.S. Kadian, M.D., reviewed plaintiff's medical records on reconsideration and similarly found that that plaintiff's condition was not disabling on any date from plaintiff's alleged onset date through her DLI. (Id. at 114.)

## V. ANALYSIS

Plaintiff raises five issues on review. First, she argues that the ALJ failed to follow the controlling legal standards regarding plaintiff's breast cancer and surgery complications. (Dkt. 16 at 3.) Second, plaintiff contends the ALJ failed to follow the controlling legal standards with respect to plaintiff's statements. (Id. at 5.) Third, plaintiff believes the ALJ erroneously issued an unfavorable decision without explanation and after announcing that the evidence supported a disability onset date around the end of 2009. (Id. at 8.) Fourth, plaintiff argues that the ALJ erroneously omitted the function-by-function RFC assessment. (Id. at 9.) Finally, she contends the ALJ failed to explain how Dr. Leonard's opinions were inconsistent with the record. (Id.) Each argument is

12

addressed in turn.

### A. The ALJ Properly Determined that Plaintiff's Atypical Ductal Hyperplasia was not a Severe Impairment

Plaintiff first contends that the ALJ's conclusion, that plaintiff's breast cancer and surgery complications were non-severe, did not apply the pertinent legal standards and was not supported by substantial evidence. (Dkt. 16 at 4.) Plaintiff cites SSR 96-8p in support of this argument that a claimant is disabled if she is unable to sustain work-related tasks on a continuing, full-time basis. (Id. at 3.) Plaintiff argues her medical appointments, surgeries, and recoveries imposed more than minimal limitations on her ability to work. (Id. at 4.) Thus, plaintiff maintains that the ALJ, in his development of the residual functional capacity, failed to consider whether plaintiff was able to work full time. (Id.) In contrast, defendant refers to plaintiff's testimony that she did not have breast cancer but a precancerous condition which was addressed through preventative surgery. (Dkt. 18 at 16.) Further, defendant cites under the regulations, an impairment is "not severe" when it does not significantly limit basic work activities for 12 months. (Id.) Defendant contends the ALJ correctly evaluated plaintiff's atypical ductal hyperplasia since plaintiff did not allege ongoing limitations related to her breast procedures and instead stated the surgeries limited

her for eight months, which does not meet the durational requirement for disability. (Id.)

An impairment is severe within the meaning of the Social Security regulations if it imposes significant limitations on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521(a). In contrast, an impairment is not severe if it "has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1982). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b).

In assessing whether a claimant has a severe medical impairment at step two, the ALJ considers any "'symptom-related limitations'—restrictions caused by symptoms, such as pain, fatigue, or weakness—provided that the claimant has 'a medically determinable impairment(s) that could reasonably be expected to produce the symptoms.'" Botten v. Astrue, No. 4:09cv57, 2010 WL 114929, at *6 (Jan. 12, 2010) (citing SSR 96-3p). However, an

impairment cannot be established solely through the claimant's statement of symptoms, but must be demonstrated "by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508; see also 42 U.S.C. § 423(d)(5)(A). When the medical evidence shows that the claimant is capable of performing basic work activities, the severity requirement cannot be satisfied. SSR 85-28 (1985); Sutton v. Colvin, No. 4:15CV129, 2016 WL 7426591, at *9 (E.D. Va. Nov. 29, 2016), report and recommendation adopted, No. 4:15CV129, 2016 WL 7426562 (E.D. Va. Dec. 23, 2016).

The ALJ found that through the DLI plaintiff's fibromyalgia, arthritis, and degenerative disc disease were severe impairments. (R. 22.) These impairments were deemed severe because they cause more than a minimal limitation on plaintiff's ability to perform work related activities. (Id.) The ALJ went on to examine plaintiff's left breast atypical ductal hyperplasia. (Id.) He concluded, although plaintiff did have an infection in May 2010, plaintiff did not allege breast procedures or complications as disabling impairments, and her testimony did not indicate ongoing limitations related to her breast procedures, therefore these procedures were designated non-severe. (Id.)

A review of the record reveals that plaintiff testified at the hearing before the ALJ that the surgery was for a pre-

cancerous condition and it limited her for eight months. (Id. at
62-63.) The medical records, post- surgery for this condition,
indicate breast exams were normal and plaintiff had a "well
healed surgical scar" and implant intact. (Id. at 516.)
Plaintiff's treating physician did not note any further
complications related to the breast. Thus, there is substantial
support in the record, based on plaintiff's testimony and
medical records, for the ALJ's finding that plaintiff's atypical
ductal hyperplasia was a non-severe impairment during the
relevant period.

### B. Substantial Evidence Supports the ALJ's Credibility Determination

Plaintiff next argues that the ALJ failed to explain why he
discredited some of plaintiff's statements but believed other
statements. (Dkt. 16 at 5.) Plaintiff asserts that her
statements were not inconsistent with the relevant medical
records. (Id. at 6.) Plaintiff finds the ALJ's reasons for
discounting plaintiff's statements do not withstand scrutiny and
call for remand. In opposition, defendant argues that
substantial evidence supports the ALJ's finding that plaintiff's
statements concerning her limitations were not entirely
credible. (Dkt. 18 at 17.) According to defendant, plaintiff's
statements concerning the intensity, persistence, and limiting
effects of her symptoms were inconsistent with the objective

medical evidence and plaintiff's testimony. (Id. at 18.)
Defendant argues the ALJ thoroughly evaluated the medical
evidence for each of plaintiff's alleged impairments and the
opinion evidence of Dr. Leonard and the state agency experts.
(Id. at 19-20.) Defendant concludes that this Court need not re-
weigh evidence or make credibility decisions. (Id. at 20-21.)

Consideration of a claimant's symptoms, including pain, is
governed by 20 C.F.R. § 404.1529. A claimant's statements about
his/her pain or other symptoms alone do not establish
disability. 20 C.F.R. § 404.1529(a). Rather, a two-pronged
analysis is applied. First, "medical signs or laboratory
findings" must show that the claimant has a medical impairment
that could reasonably be expected to produce the pain or
symptoms alleged. Id. § 404.1529(b). Second, if such an
impairment exists, the ALJ evaluates the intensity and
persistence of the pain and symptoms and determines the extent
to which they limit the claimant's capacity for work. Id. §
404.1529(c). In conducting the evaluation at step two, the ALJ
will consider all available evidence, including objective
medical evidence as well as other relevant factors such as the
claimant's daily activities, the location, duration, frequency,
and intensity of the pain or symptoms, and the claimant's
medications and other treatments. Id.

This Court must give great deference to the ALJ's

17

credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.' " Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." Eldeco, Inc., 132 F.3d at 1011 (quoting NLRB v. McCullough Envtl Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig v. Charter, 76 F.3d 585, 591 (4th Cir. 1996).

It is appropriate for an ALJ to consider medication and treatment used to alleviate a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). If the claimant requires only

18

conservative treatment, an ALJ is reasonable in holding that the alleged disability lacks the seriousness that the claimant alleges. Dunn v. Colvin, 607 Fed.Appx. 264, 274-75 (4th Cir. 2015). An ALJ may also properly "consider a claimant's daily activities in assessing the severity of a claimant's symptoms such as pain." Ellis v. Colvin, 2014 WL 2862703, at *11 (W.D. Va. June 24, 2014); Kinchen v. Colvin, No. 3:16CV55(JAG), 2016 WL 7646364, at *8 (E.D. Va. Dec. 20, 2016), report and recommendation adopted, No. 3:16CV55 (JAG), 2017 WL 57135 (E.D. Va. Jan. 4, 2017).

After review of the record in this matter, the undersigned finds instances where plaintiff's subjective statements are supported by the objective medical evidence and others that are contradicted. It is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence. Hays, 907 F.2d at 1456. The ALJ had the opportunity to observe plaintiff during the hearing and make a determination as to her credibility.

In this case, the ALJ concluded that plaintiff had medically determinable impairments that could reasonably be expected to cause her alleged symptoms. (R. 24.) However, he found that plaintiff's statements concerning the intensity,

19

persistence, and limiting effects of her symptoms were not fully credible because they were inconsistent with the objective medical evidence and plaintiff's testimony. (Id.) The ALJ acknowledged that plaintiff had limitations and difficulties during the period under review but plaintiff's regular activities suggested greater abilities than plaintiff's testimony alleged. Plaintiff testified she did nothing during the hearing before the ALJ. (Id. at 79.) This differs from her statements about daily activities such as assisting her mother with chores or cleaning, going to her doctor appointments, driving, shopping, preparing snacks, doing hobbies such as light gardening. (Id. at 232-35.) The ALJ also noted that plaintiff was frequently given an exercise routine by her treating physician to cross train two times per week. (Id. at 24.)

The ALJ further noted the conservative nature of plaintiff's treatment history. (Id. at 25.) Providers proscribed medications and injections for plaintiff's fibromyalgia, arthritis, and degenerative disc disease. (Id.) The opinions of the state agency consultants support the ALJ's credibility determination. They determined that plaintiff's impairments could reasonably limit her to light work. (Id. at 25-26.)

In that light concludes that there is substantial evidence in the record to support the ALJ's consideration of plaintiff's testimony.

20

## C. The ALJ Properly Assessed the Disability Onset Date

Plaintiff next contests the ALJ's announcement at the hearing that the evidence supports a later disability onset date of around the end of 2009. (Dkt. 16 at 8.) Plaintiff further states "Judge Ray effectively stated that disability was a fair inference from the evidence" at the end of 2009. (Id.) Defendant counters that the ALJ, consistent with his duties under SSR 83-20, correctly observed there was no evidence concerning any limitations around the time of plaintiff's alleged onset date. (Dkt. 18 at 22.) Further, defendant argues that the ALJ never stated or found that plaintiff was disabled during the relevant time period. (Id. at 23.)

The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. SSR 83-20 (1983). Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. (Id.)

Plaintiff's disability onset date is June 1, 2007. (R. at 97.) The ALJ observed that the record lacks evidence concerning plaintiff's limitations around her alleged onset date. (Id. at 71.) In the hearing, the ALJ questioned whether there was "real evidence" that he could determine plaintiff disabled prior to June 1, 2007. He then stated plaintiff's conditions worsened in late 2009 and he was "having a hard time with June 1, 2007."

(Id. at 71-72.) The ALJ posed a hypothetical question to counsel when he stated "let's assume for sake of argument that I were to say that she's disabled as of the end of 2009." (Id.) This statement was posed so that counsel could provide "real evidence" of disability in what the ALJ found to be a "thin record going back that far." (Id.) The undersigned finds this evaluation does not constitute error or necessitate remand.

### D. Substantial Evidence Supports the ALJ's RFC Assessment

Plaintiff argues the ALJ's RFC assessment omitted the function-by-function analysis required by SSR 96-8p. (Dkt. 16 at 9.) Defendant disputes this argument by first stating that plaintiff did not identify any specific relevant functions that are insufficient. (Dkt. 18 at 24.) Second, defendant asserts the Mascio Court supports the ALJ's thorough analysis in the instant case. (Id. at 25.)

The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that are based on the claimant's credible complaints. Carter v. Astrue, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); accord 20 C.F.R. § 416.945(e). Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the

22

regulations." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)(citing SSR 96-8p). The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (citing SSR 96-8p). See Kinchen, 2016 WL 7646364, at 6.

The ALJ determined that plaintiff could perform light work with additional limitations. (R. 23.) Specifically, plaintiff could occasionally lift and carry 20 pounds. (Id.) Plaintiff could stand or walk for six hours and sit for six hours. She could push and pull as much as she could lift or carry, could frequently climb ramps or stairs, and she could balance, stoop, kneel, crouch, and occasionally crawl. (Id.)

The ALJ provided a detailed discussion of plaintiff's treatment history and testimony to determine plaintiff's RFC. For four pages, the ALJ assessed evidence from providers' notes, plaintiff's hearing testimony, Social Security Administration function reports, and the state agency reviewing consultants. (Id. at 23-26.) As previously noted, plaintiff's self-reports dated June 2012 demonstrated her abilities to be more active than alleged during her hearing with the ALJ. (Id. at 230-238.)

The ALJ evaluated plaintiff's alleged medical impairments beginning with plaintiff's fibromyalgia. He noted her treatment

for fibromyalgia included prescriptions, injections, and
exercise. Under SSR 12-2p, a person has a medically determined
impairment of fibromyalgia if they have a history of widespread
pain in all quadrants of the body, at least 11 positive tender
points on physical examination or repeated manifestations of six
or more symptoms, and evidence that other disorders that could
cause these manifestations of symptoms were excluded.  SSR 12-2P
(S.S.A. 2012). The ALJ could not conclude that the criteria were
met in this case because the record was unclear on some of these
points. (R. at 25.) Plaintiff's record reported pain in all four
body quadrants but the ALJ noted the providers noted "multiple
trigger points in the back." (Id.) However, the ALJ accounted
for Plaintiff's limitations and provided exertional and postural
limitations in her RFC. (Id.)

     Next, the ALJ addressed plaintiff's history of arthritis
which caused ongoing pain in the spine and shoulders and the
medication proscribed for treatment. (Id.) The ALJ considered
plaintiff's back and neck pain due to degenerative disc disease
and the conservative treatment associated with it. He found a
substantial gap from November 2007 to June 2008 in which
plaintiff did not present with back pain. (Id.) The ALJ
evaluated the imaging records which showed "moderate C4-C5 disc
narrowing," "degenerative changes" but were "unremarkable" for
lumbar spine imaging studies. (Id.)

The ALJ then considered the opinion evidence of the state agency reviewing consultants and plaintiff's primary provider. Both experts concluded plaintiff could perform a range of light work. (Id. at 25-26.) They determined that plaintiff's pain was "supported given her treatment history but not to the extent she alleges," the exams in her file are "not that limiting," or her physical impairments were "not found to be limiting enough to prevent her from performing work." (Id. at 100, 111.) The ALJ afforded these experts significant weight because their opinions were consistent with the medical records. (Id. at 25-26.) The medical opinions of Dr. Leonard were also considered and will be discussed in further detail. (Id. at 26.)

Accordingly, the undersigned finds that substantial evidence supports the ALJ's RFC determination.

### E. Substantial Evidence Supports the ALJ's Assignment of Weight to Dr. Leonard's Opinion

Finally, plaintiff argues that the ALJ erred in failing to properly assign adequate weight to the opinion of her treating physician, Dr. Leonard. (Dkt. 16 at 9.) Specifically, plaintiff argues that the ALJ failed to sufficiently explain which evidence from the record that he found inconsistent with Dr. Leonard's opinion. (Id.) Defendant responds that Dr. Leonard's opinion lacked support from the overall records, so the ALJ reasonably assigned it little weight. (Dkt. 18 at 25-26.)

Under the regulations, certain factors are considered to determine the weight given to a medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Generally, opinions from treating sources are given more weight than other opinions, and if it is found that a treating source's opinion on the issue of the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given "controlling weight." Id. § 404.1527(c)(2). If a treating source's opinion is not given controlling weight, the above factors are considered, as well as the length, nature, and extent of the treatment relationship and the frequency of examinations. Id. § 404.1527(c)(2)(i)-(ii). However, an ALJ may give less weight to a treating source's opinion when there is persuasive contrary evidence. Bishop v. Comm'r of Soc. Sec., 583 Fed. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistencies.'" Dunn v.

26

Colvin, 607 Fed.Appx. 264, 267 (4th Cir. 2015) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d); Kinchen, 2016 WL 7646364, at *3.

In the instant case, the ALJ considered Dr. Leonard's opinion in light of the objective medical evidence and plaintiff's complaints. The ALJ acknowledged Dr. Leonard's long history of treating plaintiff. (R. 26.) Ultimately, he afforded Dr. Leonard's opinion limited weight because his opinions, including his September 2012 opinion, were inconsistent with the record as a whole. (Id.)

Dr. Leonard determined plaintiff to be disabled due to her multiple medical problems in his 2012 and 2013 reports. (Id. at 711-15.) However, his examination notes throughout the relevant period suggested both disabling limitations and repeated recommendations to exercise. (Id. at 26) For example, in May 2012, Dr. Leonard evaluated plaintiff, reported pain present in all four body quadrants with the intensity of these points as severe, symptom complex as progressive worsening, and in the same report, noted plaintiff's exercise as "cross training" with a frequency of two days per week on good weather days only. (Id. at 477.) Dr. Leonard's opinion was inconsistent with plaintiff's

27

reported activities. (Id. at 26) Plaintiff's daily activities were listed as walking up and down stairs, preparing snacks and meals, doing chores, sometimes driving, shopping, and gardening. (Id. at 231-36.) Dr. Leonard routinely noted negative reviews of plaintiff's systems in physical exams, with the exception of decreased range of motion and joint pain. (Id. at 26.) He also routinely noted plaintiff's normal gait and coordination. (Id.) The ALJ afforded limited weight to the 2013 report because the report did not indicate when the suggested limitations began or ended. (Id.) This was a significant issue since the relevant time period under review ended in December 2010. (Id.)

Additionally, the ultimate question of plaintiff's disability is a determination for the ALJ. 20 C.F.R. § 404.1527(d)(1). Dr. Leonard stated plaintiff had "been disabled since June 2007 due to her severe fatigue, chronic back pain, and rheumatoid arthritis" and these medical problems caused her to be "disabled from working in a meaningful capacity." (Id. at 711.) Therefore, the ALJ gave this opinion limited weight. (Id. at 26.)

As such, there was ample evidence in the record to support the ALJ's decision to assign limited weight to the medical source statement dated September 2012, and that conclusion is, therefore, consistent with 20 C.F.R. § 404.1527(c).

28

## VI. CONCLUSION

For the reasons set forth above, the undersigned Magistrate Judge finds that the ALJ's decision is supported by substantial evidence and does not contain legal error. Therefore, Claimant's Motion for Summary Judgment (Dkt. 15) shall be DENIED and Defendant's Motion for Summary Judgment (Dkt. 17) shall be GRANTED. An appropriate order shall issue.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

March 13, 2017
Alexandria, Virginia